OPINION OF THE COURT
Catherine C. Schaewe, J.
These claims[1] have been brought to recover for the wrongful death of two people and for property loss, all arising out of flooding and the subsequent collapse of Interstate Route 88 (I-88) over a culvert[2] at Carrs Creek near Unadilla, New York on
*700 June 28, 2006 (the collapse). This decision and order will address the motion brought by defendant State of New York to preclude the testimony at trial of the expert witness retained by claimants, as well as any participation by him in these claims on claimants’ behalf.
During the course of court conferences held regarding the cases, claimants revealed that they had each hired Richard R. Church, EE., as an expert. Defendant contends that Church’s participation in these claims constitutes an inherent conflict of interest, due to his previous employment with New York State Department of Transportation (DOT) as Director of Region 9 (the DOT Region in which the collapse occurred) through 1996. Defendant additionally contends that Church’s activities as an expert on claimants’ behalf would violate Fublic Officers Law § 73 (8) (a) (ii), which contains certain prohibitions on the future involvement by former state employees in any transaction in which he or she worked while employed by the State.
Turning to the first issue, courts have generally based an analysis of whether a conflict of interest exists that would disqualify an expert witness on a two-part test (see e.g. Roundpoint v V.N.A., Inc., 207 AD2d 123 [1995]). The first prong of the test is whether it was objectively reasonable for the party who initially retained the expert (defendant, in this instance, which had employed Church long before his involvement with claimants) to conclude that a confidential relationship existed between them (id. at 125). The second prong of the test is then whether any confidential or privileged information had been disclosed to the expert by that first party (id.). If either of these questions is answered in the negative, disqualification is generally inappropriate (id., citing Wang Labs., Inc. v Toshiba Corp., 762 F Supp 1246, 1248 [ED Va 1991]). Unsurprisingly, the courts have placed the burden of establishing that both prongs of this test have been met on the proponent of disqualification (Grioli v Delta Intl. Mach. Corp., 395 F Supp 2d 11, 14 [ED NY 2005]; English Feedlot, Inc. v Norden Labs., Inc., 833 F Supp 1498, 1501-1502 [D Colo 1993]).
In this specific instance, regarding the first prong of the test, defendant has submitted an affidavit from the current Director of DOT’s Region 9, John R. Williams, EE. In that affidavit, Williams sets forth a summation of his job duties and activities, as well as the formal job description for that position during *701 Church’s tenure.[3] Regarding defendant’s expectation of confidentiality, Williams concludes: “[a]s may be inferred from this brief description, the exchange of confidential information to the Regional Director is an important part of the job function.”[4]
In response, claimants note that no confidentiality agreement exists between Church and his prior employer. Claimants further argue that courts have held that where an expert received only information that was discoverable in the case, an expectation of confidentiality is not reasonable, citing Palmer v Ozbek (144 FRD 66 [D Md 1992]).
Despite claimants’ arguments, the court finds that defendant certainly had an objectively reasonable expectation of a confidential relationship with Church. While both the State itself and the DOT have policies generally favoring transparency and disclosure, there are clearly situations which may arise in the course of state governance where confidentiality is not only reasonably expected, but statutorily required, whether those be personnel matters, criminal investigations, communications with attorneys or any of several other categories (see Public Officers Law § 87 [2]). Church’s direct employment by defendant as a high-ranking DOT official places him squarely within the ambit of those who would both be subject to receiving such types of confidential information, and who would also be reasonably expected to maintain that confidentiality.
However, defendant’s argument clearly fails on the second prong of the test. Defendant has simply failed to establish that Church received any confidential information whatsoever during the course of his employment at DOT that might pertain to the issues in these cases, which this court finds to be a necessary showing for preclusion of his testimony (see Greene, Tweed of Del., Inc. v DuPont Dow Elastomers, L.L.C., 202 FRD 426, 429 [ED Pa 2001]; In re Ambassador Group, Inc., Litig., 879 F Supp 237, 244-245 [ED NY 1994]). The examples of confidential information cited in defendant’s papers are either completely speculative at this time (such as Church’s possible awareness “of any potential deficiencies and/or possible problems with [the *702 culvert] due to the nature of his employment”),[5] or irrelevant (such as Church’s apparent involvement in the inspection and decision-making process during the collapse of a similar type of structure in 1972),[6] or simply not confidential in any way (all of the documentation submitted as exhibits in support of defendant’s motion appears to be obtainable through the State’s Freedom of Information Law). Moreover, in an affidavit submitted in support of claimants’ opposition to the motion, Church himself states that he had obtained no confidential knowledge regarding the culvert through his employment at DOT. He further states that he did not approve or design the culvert, nor did he have any design input in its installation.[7] Finally, when at oral argument of this motion the court offered defendant the opportunity to provide any truly confidential information to the court for an in camera review, defendant candidly acknowledged that there appears to be no instance of confidential information obtained by Church during the course of his employment which would be relevant to the cases at hand. Given this lack of disclosure of confidential information, there is clearly no basis under the foregoing analysis to disqualify Church from acting as claimants’ expert in these claims due to a conflict of interest.
However, defendant’s contention that Church’s participation might constitute a violation of Public Officers Law § 73 (8) (a) (ii) requires further examination. That provision states:
“No person who has served as a state officer or employee shall after the termination of such service or employment appear, practice, communicate or otherwise render services before any state agency or receive compensation for any such services rendered by such former officer or employee on behalf of any person, firm, corporation or other entity in relation to any case, proceeding, application or transaction with respect to which such person was directly concerned and in which he or she personally participated during the period of his or her service or employment, or which was under his or her active consideration.”
Defendant advises that it has requested that the New York State Commission on Public Integrity (the Commission) render *703 an opinion on the propriety of Church’s involvement in this matter, in light of his previous employment with DOT and his involvement with the culvert repairs in 1996, given that section of the law.[8] To date, the court has not been advised of any response by that Commission to defendant’s request.
Claimants, however, have provided the court with an “informal,” “advisory” and nonbinding opinion (the opinion) addressing the same question, issued by the State Ethics Commission (the Commission’s predecessor, also referred to herein as the Commission for ease of understanding) to Church, dated September 21, 2007.[9] The opinion sets forth at length the facts as presented by Mr. Church in his request to the Commission for advice. Among those statements are the following:
• The Carrs Creek Bridge (the bridge) was constructed in 1974.
• The bridge required emergency stream channel erosion repairs in 1996, during Church’s tenure with DOT. The emergency contract to repair the erosion would have been designed by the staff of the regional design engineer, who reported to Church. Further, the contract would have been supervised and inspected by staff of the regional construction engineer, who also reported to Church.
• Church was not aware that the bridge required any repairs other than the erosion repairs referenced above.
• Prior to Church’s retirement, there were no “Red Flag” ratings for the structure (that being the worst structural deficiency rating given by DOT).
• Church indicated that he has been asked by claimants to provide expert testimony, including his knowledge of DOT design and construction procedures that were current in and before the bridge was built.
• Finally, Church advised the Commission that there *704 would be “no testimony from [him], of any kind, pertaining to the [bridge] within the period that [he was] the Regional Director, which [would] include the erosion repairs to the Carrs Creek Bridge.”[10]
In its opinion, the Commission discussed at length the post-employment restrictions — both the two-year bar and the lifetime bar — contained in Public Officers Law § 73 (8) (a), stating: “[f]or the two-year bar, the specific matter is irrelevant; the central question is whether it is before the former agency. For the lifetime bar, the agency is irrelevant; the central question is whether the transaction is one on which the former employee worked while in State service.”[11] The Commission concluded that “[t]his is a new and separate matter, notwithstanding the fact that [Church] may have been directly concerned or personally participated in other transactions concerning the Carrs Creek Bridge, specifically the emergency erosion repairs.”[12] The opinion further stated that Church could:
“provide expert testimony based on [his] engineering knowledge, training and experience on industry standards for bridges . . . [He] may testify about [his] knowledge of DOT design and construction procedures that were current in and before the Carrs Creek Bridge was built, which is prior to [his] tenure as Regional Director. [He] may not provide any testimony about the Carrs Creek Bridge within the period that [he was] the Regional Director, which will include the erosion repairs to the Carrs Creek Bridge. [He] may provide expert engineering testimony pertaining to the inspection and failure of the structure for the period 1998 until the collapse in 2006.”[13]
As a general rule, courts routinely defer to a governmental agency charged with responsibility for administration of a statute (Matter of Gruber [New York City Dept. of Personnel— Sweeney], 89 NY2d 225 [1996]), unless the issue is one of “pure statutory reading and analysis” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; see also Seittelman v Sabol, 91 NY2d 618, 625 [1998]). Accordingly, the Commission’s determination that Church’s participation in this claim constitutes a “new and separate matter,” based on its evaluation of the *705 factual information presented to it[14] —which, again, is nonbinding and advisory only — is entitled to the court’s deference.[15]
However, that is not the end of the matter. The Commission has notably indicated that Church should not provide any testimony regarding events during his tenure as Regional Director. While this instruction might be acceptable to claimants, defendant may well have a differing perspective. Any testimony by Church to the effect that defendant was negligent in its “design, construction, repair, maintenance, upkeep, inspection, operation, ownership [and] supervision”[16] of the bridge simply begs for a line of questioning from defendant on cross-examination[17] regarding such activities during Church’s tenure at DOT, both in regard to the bridge itself as an issue directly relevant to the claim, as well as generally throughout the region, which would certainly seem pertinent to Church’s credibility and the weight to be given to his testimony.
It would clearly be grossly inequitable to allow claimants the use of Church’s expertise, as garnered through his substantial time at DOT, and yet simultaneously forbid defendant to inquire of him what decisions he made or what conditions he found permissible while he was Regional Director. While the question of whether such testimony would be relevant or admissible must wait until placed in context at trial, the court notes that, if such testimony is found to be relevant and admissible and Church declines to answer (presumably due to concern for the consequences of contravening the Commission’s opinion, informal though it be), a motion to strike some or all of his testimony might be entertained by the court. While such considerations are clearly only speculative at this time, claimants should be aware of the potential obstacles they might face at trial in hiring Church as their expert.
*706 In conclusion, defendant has failed to meet its burden of showing that claimants’ proposed expert should be disqualified. Further, the court must, at this time, defer to the (nonbinding and advisory) opinion issued by the Commission that Church’s participation in these claims would not be in violation of Public Officers Law § 73 (8) (a) (ii). Defendant’s motion to preclude Richard R. Church, EE., from acting as claimants’ expert is hereby denied, without prejudice.

. The court, with the consent of the parties, has ordered that the claims be joined for purposes of discovery and trial, due to their foundation in the same set of facts.

. Although the structure is technically a culvert from an engineering standpoint, it is also defined as a bridge pursuant to Highway Law § 230.

. Both descriptions include the responsibility for the operation and maintenance of the transportation system within the Region, establishment of operating standards, development of the multi-year capital program for the Region, and oversight of a staff of hundreds of employees (affidavit of John R. Williams, EE. sworn to Feb. 4, 2008 [defendant’s motion to preclude, exhibit B] K1I 3, 5).

. Id. at H 3.

. Affirmation of Joseph E Romani, Assistant Attorney General, dated Feb. 5, 2008 in support of defendant’s motion to preclude, H 9.

. Affidavit of Ronald Mauro, EE. sworn to on Feb. 4, 2008 (defendant’s motion to preclude, exhibit C), exhibit 4.

. Affidavit of Richard Church, EE. sworn to Feb. 26, 2008, K 12.

. Defendant also cites the potential violation of “Bulletin Code B-07G215” (defendant’s motion to preclude, exhibit A). However, the origin of this document is unclear.

. Affirmation of Luis E Ras, Esq., dated Feb. 25, 2008, in opposition to motion, exhibit A.

. Id. at 2.

. Id. at 3.

. Id. at 5.

. Id.

. Once again, the court notes that the factual data presented to the Commission came solely from Church, without defendant being given the opportunity to provide potentially relevant input. However, none of the information supplied to the court during the course of this proceeding provides any concrete basis for a determination that the Commission’s interpretation was incorrect.

. The court notes that facts may be uncovered during the course of this claim which might shed a different light on the subject of either Church’s possession of confidential information gained from his employment with DOT or a potential violation of Public Officers Law § 73 (8) (a). In that event, defendant will not be barred from raising these issues again.

. Claim No. 112960, U 40.

. At oral argument, defendant specifically noted its concerns on this issue, as raised by the Commission’s opinion.