Century Indem. Co. v Brooklyn Union Gas Co. (2024 NY Slip Op 51359(U))

[*1]

Century Indem. Co. v Brooklyn Union Gas Co.

2024 NY Slip Op 51359(U)

Decided on October 1, 2024

Supreme Court, New York County

Lebovits, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 1, 2024
Supreme Court, New York County

Century Indemnity Company, Plaintiff,

against
Brooklyn Union Gas Company, AMERICAN RE INSURANCE CO, CERTAIN UNDERWRITERS OF LLOYDS, LONDON MARKET INS COMPANIES, EMPLOYERS COMMERCIAL UNION INS, FIREMANS FUND INSURANCE CO, HOME INSURANCE CO, NATIONAL UNION INS CO OF PA, NORTH RIVER INSURANCE CO, TRAVELERS INSURANCE CO, and ZURICH INSURANCE CO, Defendants.

Index No. 603405/2001

O'Melveny & Myers LLP, New York, NY (Jonathan Rosenberg, Anton Metlitsky, and Leah Godesky of counsel), and Los Angeles, CA (Daniel Petrocelli and Craig P. Bloom of counsel), for plaintiff.
Covington & Burling LLP, Washington, D.C. (Benjamin J. Razi and Justin T. Howell of counsel), and San Francisco, CA (Gretchen Hoff Varner and Ryan M. Buschell of counsel), for defendant Brooklyn Union Gas Company.

Gerald Lebovits, J.

This motion arises from expert discovery in two long-running insurance-coverage actions joined for trial: this action, and Brooklyn Union Gas Co. v Century Indemnity Co., Index No. 403087/2002 (Sup Ct, NY County).
As relevant here, Century Indemnity Company provided excess-insurance coverage to Brooklyn Union Gas Company for nearly three decades in the middle of the last century. The two coverage actions concern the extent, if any, of Century's obligations to provide coverage for costs incurred by Brooklyn Union in government-mandated cleanup of former manufactured-gas plants (MGPs) located in various parts of New York City.
Given the factual and legal complexities involved, the parties and the court determined that the coverage actions should be divided into multiple phases, each addressing different groups of MGP sites. Phase 1, dealing with three MGPs located on the Gowanus Canal in Brooklyn, has been tried to verdict. This court decided the parties' respective CPLR 4404 post-trial motions in January 2024.[FN1]
(See Century Indem. Co. v Brooklyn Union Gas Co., 82 Misc 3d 940 [Sup Ct, NY County 2024].) The parties are now engaged in expert discovery in preparation for a trial on Phase 2, dealing with the cleanup of Newtown Creek (separating Brooklyn and Queens) and with five MGPs located in different parts of Brooklyn and on Staten Island.
On motion sequence 059, Brooklyn Union now moves to disqualify two of Century's designated experts, Susan B. Welt and Alice Blayney, on the ground that both Welt and Blayney previously served as consultants for Brooklyn Union on issues related to this litigation. On motion sequences 058, 060, and 061, the parties move without opposition to seal different aspects of the briefing (and exhibits) on the motion to disqualify. The motions to seal are granted [*2]without opposition. The motion to disqualify is granted.[FN2]
DISCUSSION
I. The Parties' Motions to Seal (Mot Seqs 058, 060, 061)
On motion sequences 058 (Brooklyn Union), 060 (Century), and 061 (Brooklyn Union), the parties have separately moved to seal exhibits submitted in support of, and in opposition to, Brooklyn Union's motion to disqualify. The parties have also moved to seal unredacted versions of the parties' memorandums of law submitted on the motion to disqualify; and Brooklyn Union has filed public versions of those memorandums with limited redactions to which Century has not objected. (See NYSCEF Nos. 1442, 1443, 1444 [redacted memorandums of law]; NYSCEF Nos. 1440, 1441 [redacted affirmations of Welt and Blayney].) The ground relied on to support sealing is that the exhibits in question (and passages in the memorandums of law quoting from the exhibits) include privileged and/or confidential information about Brooklyn Union's cleanup of the sites at issue and litigation-related activities arising from that cleanup. This court agrees that Brooklyn Union has a strong interest in preserving the privilege and confidentiality of that information. The court also concludes that the information sought to be sealed does not go to the core of the issues presented by the motion to disqualify—as reflected in the limited extent of the proposed redactions of the memorandums of law. The court therefore determines that the requested sealing order is warranted and appropriate. The court has attempted as much as possible in this decision to cite only documents filed on the public docket (including to the redacted versions of the parties' memorandums of law).
II. Brooklyn Union's Motion to Disqualify (Mot Seq 059)
On motion sequence 059, Brooklyn Union moves to disqualify Welt and Blayney, two of Century's experts. The Appellate Division has long held that a court "has the inherent power to disqualify an expert witness to preserve the fairness and integrity of the judicial process"—and that in some circumstances disqualification is mandatory.[FN3]
(Manna Amsterdam LLC v West 73rd Tenants Corp., 226 AD3d 456, 457 [1st Dept 2024] [affirming grant of motion to disqualify, [*3]citing Roundpoint v V.N.A., Inc., 207 AD2d 123, 125 (3d Dept 1995)].)
In particular, disqualification is required when the party seeking disqualification shows that two conditions have been satisfied: (i) "it was objectively reasonable for a party claiming to have initially retained the expert to conclude that a confidential relationship existed between them"; and (ii) "confidential or privileged information was disclosed by the party to the expert." (Id.; see Winzelberg v 1319 50th St. Realty Corp., 114 AD3d 673, 673 [2d Dept 2014] [affirming denial of motion to disqualify, because movants "failed to establish a sufficient basis" for disqualification].) The court will consider these two conditions in turn.[FN4]

A. Whether Brooklyn Union has Established an Objective Basis to have Believed that a Confidential Relationship Existed between Brooklyn Union, Welt, and Blayney
In determining "whether a confidential relationship existed," a court must "evaluat[e] all of the evidence presented concerning the interaction between counsel and the expert." (Friedrich v Blasz, 2006 NY Slip Op 50432[U], at *3 [Sup Ct, Erie County 2006]; accord Manna Amsterdam Ave., 226 AD3d 457 [considering nature and extent of work performed by expert for moving party].) In this case, Welt and Blayney were previously employed by an environmental consulting firm called Geosyntec. Brooklyn Union hired Geosyntec, while Welt and Blayney worked there, to provide litigation support services related to former Brooklyn Union MGP sites in New York City (including sites at issue in the Phase 2 trial). Brooklyn Union retained Geosyntec through a formal retainer agreement that concededly contains an express confidentiality provision. And it is undisputed that Welt and Blayney performed work for Brooklyn Union on this matter as Geosyntec consultants.
On this record, therefore, it would appear straightforward to conclude that Brooklyn Union reasonably believed that it had a confidential relationship with Welt and Blayney (along with other Geosyntec consultants). (See Manna Amsterdam Ave., 226 AD3d at 457 [holding that a confidential relationship existed when the expert was previously employed by the moving party]; Matter of 91st St. Crane Collapse Litig., 2012 WL 8421725, at *4-5 [Sup Ct, NY County Aug. 27, 2012] [Feinman, J.] [holding that a confidential relationship existed between movant and an expert who had provided it consulting services, based on movant's production of a engagement agreement with the expert's consulting firm that included a confidentiality provision]; cf. Out Publ. Inc. v Lipo Liquidating Corp., 2011 WL 10858170, at *5 [Sup Ct, NY County Sept. 14, 2011] [confirming a special referee's determination that "in the absence of a confidentiality or retention agreement (or other objective evidence)," it was unreasonable for movant's counsel to have believed that a single meeting with two experts gave rise to a confidential relationship] [emphasis added].)
Century, though, contends that even on these facts, Brooklyn Union could not reasonably have believed that it had a confidential relationship with Geosyntec staff acting within the scope of the retention. This court disagrees with Century.
Century argues first that Brooklyn Union lacked a reasonable belief in the confidentiality of its relationship with Geosyntec, because the engagement agreement between them acknowledged that Geosyntec's work product (including notes, drafts, and the like) might be discoverable by litigation adversaries.[FN5]
(See NYSCEF No. 1443 at 15-16.) Thus, Century says, "Brooklyn Union never intended to keep Geosyntec's work confidential from Century." (Id.) This argument gets the confidential-relationship inquiry the wrong way around. That inquiry does not give weight to the confidentiality of the expert's work product, but rather to the confidentiality of sensitive client information provided to the expert in the course of the expert's retention. (See e.g. Manna Amsterdam Ave. LLC v West 73rd Tenants Corp., 2022 WL 18397697, at *2 [Sup Ct, NY County Dec. 29, 2022] [holding that movant had established a confidential relationship when the expert in question, while employed by a consulting firm retained by movant, was tasked with evaluating financial documents of movant that were relevant to the litigation and that movant had provided to the consulting firm], affd 226 AD3d 456.[FN6]
) This focus on a movant's reasonable beliefs about the confidentiality of information [*4]flowing from itself to the expert (not from the expert to movant) tracks the basic purpose of disqualifying an expert witness due to a conflict—preventing Party A from gaining an unfair and inappropriate advantage over Party B through retaining an expert who had learned B's confidential information while working for B. And Century provides no New York authority holding otherwise.[FN7]

Century also argues that Brooklyn Union lacked a reasonable belief that it had a confidential relationship with Welt or Blayney, in particular, "for purposes of this litigation." (NYSCEF No. 1443 at 16-18.) In advancing this contention, Century points to the limited amount of time these experts spent working on behalf of Brooklyn Union on the specific subjects now at issue in this case, and the limited extent (if any) of contacts between Welt/Blayney and Brooklyn Union's counsel. (See id.) But the contention relies on the premise that different conflict-of-interest analyses should apply to (i) a consulting firm retained by a client and (ii) firm employees who perform work for that client pursuant to the retention. That makes no sense. Nor is it New York law. (See Matter of 91st St. Crane Collapse, 2012 WL 8421725, at *5 [holding that because movant had established that it was objectively reasonable to conclude that it had a confidential relationship with a particular engineering consulting firm, it therefore followed that movant had shown the necessary confidential relationship with the particular engineer at the firm who was the subject of the motion].)
Moreover, even if the court were to accept the dubious premise that different conflicts analyses apply to a consulting firm versus the firm's employees, Century's conclusion would still not follow. Century has not identified a reason in this particular case to reach divergent results for Geosyntec versus for Welt/Blayney. Century does not, for example, provide facts that might show that Welt/Blayney were exempt from the confidentiality requirements imposed by Geosyntec's engagement agreement; or that Brooklyn Union understood that Welt/Blayney's work pursuant to the engagement otherwise stood on a different footing from that of Geosyntec staff generally. In short, Century has not shown that it would be unreasonable for Brooklyn Union to believe that it had a confidential relationship with Welt and Blayney in their capacities as Geosyntec employees, just as it did with Geosyntec itself.
Brooklyn Union has satisfied the first prong of the expert-disqualification inquiry. The court now turns to the second prong: Whether Brooklyn Union disclosed confidential information to Welt and Blayney in the course of their work on Brooklyn Union's behalf.
B. Whether Brooklyn Union has Established that it Provided Confidential Information to Welt and Blayney
Brooklyn Union argues that in the course of its confidential relationship with Geosyntec, Welt, and Blayney, it disclosed confidential information to Welt and Blayney, requiring their [*5]disqualification here. This court agrees.
1. Brooklyn Union's showing that it provided confidential information
With respect to Welt, Brooklyn Union provides evidence from Geosyntec invoices showing that while working for Geosyntec, Welt billed more than 100 hours of work to Brooklyn Union on issues related to its MGP contamination (see NYSCEF No. 1442 at 10)—including a restricted-participation strategy call, organized to discuss MGP contamination in Newtown Creek, that used slides marked "Privileged and Confidential, Attorney Work Product" (NYSCEF No. 1360 at ¶ 6 [affirmation of Brooklyn Union's environmental counsel]). Brooklyn Union also provides evidence that given this work, Welt would have received from counsel "confidential documents concerning historical operations at the former MGP sites that were selected by counsel as the most significant for Geosyntec consultants to review, as well as attorney-client privileged memoranda drafted by counsel concerning these potential environmental liabilities."[FN8]
(See NYSCEF No. 1360 at ¶ 5; accord NYSCEF No. 1359 at ¶¶ 4-5 [affirmation of Geosyntec scientist].)
With respect to Blayney, Brooklyn Union provides evidence that she performed thousands of hours of technical/litigation-support work for Brooklyn Union on MGP-related subjects—including work both for the Gowanus Canal-related sites at issue in Phase 1 and for a Phase 2 site and Newtown Creek. (See NYSCEF No. 1359 at ¶ 7; NYSCEF No. 1442 at 18-19.) And the Geosyntec affirmation represents that in the course of that work, Blayney had access to privileged and confidential information and undertook specific research tasks relevant to this litigation at the direction of outside counsel. (NYSCEF No. 1359 at ¶¶ 7-8.)
2. Century's arguments seeking to rebut Brooklyn Union's showing
The evidence described above supports a conclusion that Welt and Blayney received confidential information from Brooklyn Union in the course of their work pursuant to the Geosyntec retention, thereby requiring their disqualification as experts. (See Manna Amsterdam Ave., 226 AD3d at 457.) Century has several arguments for why Brooklyn Union nonetheless has not satisfied the second prong of the disqualification inquiry. None is persuasive.
1. Century emphasizes representations by Welt and Blayney that they do not recall receiving confidential information or documents from Brooklyn Union or its outside counsel in connection with MGP-related subjects while working at Geosyntec. (See NYSCEF No. 1443 at 20-21, citing NYSCEF No. 1441 at ¶¶ 7, 8, 9, 10, 13 [Welt]; NYSCEF No. 1440 at ¶¶ 4, 7 [Blayney].) But Century provides no authority that an expert's professed lack of recollection of receiving confidential information is dispositive, or even significant, to this prong of the disqualification inquiry.
Nor, absent authority on point, does this court agree with Century's suggestion that this [*6]court should accord weight to Welt and Blayney's lack of recollection. To say that an expert does not now recall specifically prior work that she performed, or prior documents she reviewed, is different from saying that everything she learned in the course of that work has been forgotten or has been discarded from her mind—as opposed to being integrated into her basic background knowledge of the issues on which she is opining now. And this court sees no way an expert could realistically try to forget everything she once learned, or could meaningfully separate knowledge derived from "permissible" sources and from confidential disclosures by the adverse party. The court declines Century's implicit invitation to attempt to unblow this horn.
Relatedly, Century emphasizes (NYSCEF No. 1443 at 21) Blayney's representation that she has not discussed with Welt her prior work at Geosyntec that related specifically to particular MGP sites (NYSCEF No. 1440 at ¶ 10). That is different, though, from representing that nothing Blayney learned in that prior work informed, or was helpful to her in carrying out, her current engagement for Century supporting Welt's expert report.
2. Century also argues that Brooklyn Union has failed to establish that Welt or Blayney "received confidential information 'substantially related' to the subject matter of Ms. Welt's opinions here," through identifying "specific and unambiguous disclosures" that Brooklyn Union made to them "that if revealed would prejudice" it here. (NYSCEF No. 1443 at 19, quoting Eastman Kodak Co. v Kyocera Corp., 2012 WL 4103811, at *8 [WD NY Sept. 17, 2012].) But Eastman Kodak is a federal decision, applying federal law. Century does not explain—or even attempt to explain—why this court should take that case as supplying the standard to adopt now.[FN9]
Indeed, Century cites no New York case denying disqualification on the ground that confidential information previously supplied to the expert was insufficiently related to the later litigation in which disqualification was sought. At most, Century points to a Court of Claims decision that denied a motion to disqualify because the movant "simply failed to establish that [the expert] received any confidential information whatsoever during the course of his employment at DOT that might pertain to the issues in these cases." (NYSCEF No. 1443 at 20, citing Tower Ins. Co. of NY v State, 20 Misc 3d 698, 701 [Ct Cls 2008] [emphasis added].) That is not the same.
Regardless, this court is satisfied that the information that Brooklyn Union gave Welt and Blayney is substantially related to their current expert work for Century. In particular, it is undisputed that Welt's Phase 2 expert report (and thus her likely expert testimony) addresses, in effect, what Brooklyn Union knew about MGP-related contamination at what times, and how much of the environmental contamination that occurred during MGP operations could have been prevented at the time. And Brooklyn Union has provided evidence that some confidential documents and information received by Welt and Blayney related to historical operations at the MGP sites and how those operations contributed to the current contamination Brooklyn Union is being required to remediate. (See NYSCEF No. 1359 at ¶ 8; NYSCEF No. 1360 at ¶¶ 3-4, 6; NYSCEF No. 1442 at 13-14, 18-20.)
This court does not agree with Century that this information is unrelated for present [*7]purposes because it did not bear directly on insurance-coverage questions (see NYSCEF No. 1443 at 2); or because some of that information related to the particular MGP sites at issue in the Phase I trial (see id. at 19). As Brooklyn Union contends (see NYSCEF No. 1444 at 11-12), the disqualification inquiry concerns the relationship between confidential information an expert learned from Party A and the expert's later work on behalf of Party B—not with the relationship between the confidential information and the use that B will make of the expert's work in advancing B's legal arguments. Put differently, a substantial relationship may exist between the confidential information disclosed by A to the expert and the work being done by the expert for B, even if that relationship was not the reason for A to have disclosed the information initially.
Here, for example, it may well be that Brooklyn Union disclosed to Welt information and documents relating to historical operations at Brooklyn Union's MGP sites because she needed those materials to assist "Brooklyn Union's remediation efforts" at its MGP sites rather than addressing "insurance or insurance-coverage issues," as Century contends. (NYSCEF No. 1443 at 2.) It is also true, though, that the information and documents that Welt reviewed would potentially bear on the then-contemporary understanding of MGP-based pollution and how it could be prevented—the issue on which Welt now opines (see generally NYSCEF No. 1364 [expert report].[FN10]
That understanding, in turn, will be probative of a crucial coverage question: Whether the underlying MGP-related environmental contamination constitutes an expected-or-intended or accidental injury.
3. Finally, Century argues that this court's consideration of "whether to impose the extraordinary remedy of disqualification" should encompass "potential prejudice" from granting or denying Brooklyn Union's request to disqualify. (NYSCEF No. 1443 at 21-22.) But, as noted above (see n 4, supra), New York precedents in this area do not require a movant separately to establish that it would be prejudiced absent disqualification of the non-movant's expert. To the contrary, imposing that burden on the movant would put an undue thumb on the scale against disqualification, given the difficulties inherent in isolating and bringing out how an expert's current work for non-movant B has been affected by knowledge of or reliance on confidential information previously disclosed by movant A.
Century also does not attempt to show that New York law requires this court to afford meaningful weight in its analysis to the prejudice Century may suffer—as opposed to treating any prejudice as an unavoidable collateral consequence of imposing disqualification to protect the integrity of the judicial process. And in any event, Century does not identify any specific prejudice it will suffer here from the disqualification of Welt and Blayney, beyond the loss of its chosen experts "from a limited pool of individuals qualified to opine on that subject, and its significant investment of time and money" in those experts. (NYSCEF No. 1443 at 22.) But those same harms would result any time an expert is disqualified at or near the expert-report stage of a litigation. Century does not identify anything particular here that might set its case apart. Nor does Century argue (or provide support for) a rule that disqualification is unavailable once the expert sought to be disqualified has prepared and produced a report in advance of [*8]dispositive motions or trial. The court declines to adopt that kind of rule here.
Accordingly, it is
ORDERED that the parties' motions to seal (mot seqs 058, 060, 061) are granted without opposition, and it is further
ORDERED that the Clerk of the Court is directed, upon service on him of a copy of this order with notice of its entry, to seal the documents appearing at NYSCEF Nos. 1358, 1362, 1363, 1364, 1367, 1368, 1369, 1370, 1371, 1372, 1373, 1374, 1375, 1376, 1377, 1378, 1379, 1380, 1381, 1390, 1393, 1395, 1396, 1397, 1398, 1399, 1400, 1401, 1402, 1403, 1404, 1405, 1406, 1410, 1411,1418, 1419, 1420, and 1427; and to separate these documents and to keep them separate from the balance of the file in this action; and it is further
ORDERED that thereafter, or until further order of this court, the Clerk of the Court shall deny access to the said sealed documents to anyone (other than the staff of the Clerk or the court) except for counsel of record for any party to this case and any party; and it is further
ORDERED that Brooklyn Union's motion (mot seq 059) to disqualify Susan B. Welt and Alice Blayney from serving as expert witnesses for Century in connection with this action—whether as testifying experts or otherwise—is granted; and it is further
ORDERED that Brooklyn Union serve a copy of this order with notice of its entry on all parties and on the County Clerk by the means set forth in the court's e-filing protocol, available on the e-filing page of the court's website, 
https://ww2.nycourts.gov/courts/1jd/supctmanh/E-Filing.shtml), which shall update its records accordingly.
DATE 10/1/2024

Footnotes

Footnote 1:In March 2024, the court resolved a related dispute between the parties about whether interest would (or would not) accrue on the money judgment to be entered based on the jury's verdict. (See Century Indem. Co. v Brooklyn Union Gas Co., 83 Misc 3d 689 [Sup Ct, NY County 2024].) The parties have noticed, but not yet perfected, appeals/cross-appeals from this court's order on the parties' CPLR 4404 motions, the court's order on the judgment-interest motion, and the post-verdict judgment itself. (See NYSCEF Nos. 1315, 1316, 1355, 1425, 1434.)

Footnote 2:Century has sought leave from this court to file a surreply opposing disqualification, contending that leave is warranted because Brooklyn Union made new arguments on reply. (See NYSCEF No. 1432.) This court disagrees. As this court reads the record, the reply arguments at issue permissibly respond to points made by Century in its opposition papers, rather than constituting wholly new arguments made only on reply (as Century would have it). Permitting a surreply is not warranted in these circumstances. (See Board of Mgrs. of the 100 W. 93 Condominium v 660 Columbus Retail Owner, 227 AD3d 458, 459 [1st Dept 2024].)

Footnote 3:In opposing disqualification, Century states that "New York courts have discretion to disqualify an expert witness where doing so would 'preserve the fairness and integrity of the judicial process.'" (NYSCEF No. 1443 at 12[emphasis added], quoting Roundpoint v V.N.A. Inc., 207 AD2d 123, 125 [3d Dept 1995].) To the extent Century is suggesting that a New York court's resolution of a request to disqualify is always discretionary, that suggestion is wrong. 

Footnote 4:Century asserts—relying largely on federal cases that have not been cited by New York courts—that courts also consider "issues of fundamental fairness" and "whether any prejudice might occur if an expert is or is not disqualified." (NYSCEF No. 1443 at 14 [internal quotation marks omitted]; see also id. at 21-22.) The Appellate Division's precedents in this area, though, make clear that these factors are already accounted for in the two-prong test described above, rather than forming a separate disqualification criterion. (See Roundpoint, 207 AD2d at 125-126, citing Wang Labs., 762 F Supp 1246, 1248-1249 [ED VA 1991].)

Footnote 5:Century's quotations from the engagement agreement imply that the agreement's terms expressly limited the scope of the agreement's confidentiality provision. (See NYSCEF No. 1443 at 15 ["Brooklyn Union and Schiff Hardin recognized that distinction by engaging Geosyntec with the express understanding that any privilege or confidentiality would extend only to" subjects identified in the agreement].) Century's implication is inaccurate. The quoted language from the agreement describes the scope of Geosyntec's engagement, not the scope of the confidentiality provision. The agreement also states that all of Geosyntec's work pursuant to that engagement is to be treated as confidential, and that Geosyntec is to refrain from disclosing any information to third parties without specific authorization from counsel or from Brooklyn Union. (See NYSCEF No. 1362 at 1.)

Footnote 6:Accord Matter of 91st St. Crane Collapse, 2012 WL 8421725, at *5 [holding that a confidential relationship existed because the expert's engagement agreements "contain express provisions prohibiting disclosure to third parties of confidential information obtained in the course of performing the agreement"] [emphasis added]; Out Publ., 2011 WL 10858170, at *5 [treating as relevant for confidential-relationship purposes whether "documents passed from the attorney to the expert"]; Tower Ins. Co. of NY v State, 20 Misc 3d 698, 701 [Ct Cls 2008] [holding that a confidential relationship existed because the expert's employment by movant "places him squarely within the ambit of those who would both be subject to receiving such types of confidential information, and who would also be reasonably expected to maintain that confidentiality"] [emphasis added]; see also English Feedlot, Inc. v Norden Labs., Inc., 833 F Supp 1498, 1503 [D Colo 1993] ["In considering the first prong of the two-step inquiry, [the client] had an objectively reasonable expectation that its communications to [the expert] would be kept confidential."] [emphases added]; Wang Labs., 762 F. Supp at 1249 [holding that a confidential relationship existed based in part on the nature and extent of information provided by movant's counsel to the expert].)

Footnote 7:Even if one were to take the confidentiality of Geosyntec's work product as the touchstone here, the court is somewhat skeptical that disclosure of that work product only to Century—as opposed to the public at large—would defeat the confidential nature of the Brooklyn-Union/Geosyntec relationship. (Cf. Matter of 91st St. Crane Collapse, 2012 WL 8421725, at *8 [rejecting the argument that movant's production in discovery of the expert's work product waived the confidentiality of the information previously provided by movant to the expert].)

Footnote 8:The opening of Century's memorandum of law suggests in passing that the information Welt received "during the consultancy" was either "already produced to or otherwise discoverable by Century" in the current coverage litigation. (NYSCEF No. 1443 at 1 [bolding and italics omitted].) It is unclear what discoverable information Century believes Brooklyn Union provided to Welt, as distinct from work product that Welt provided to Brooklyn Union.

Footnote 9:Century elsewhere suggests that federal disqualification decisions are informative because "New York courts routinely cite to and rely on federal cases in deciding expert-disqualification motions." (NYSCEF No. 1443 at 12 n 5.) That New York courts sometimes adopt principles derived from federal caselaw, though, does not in itself establish that this court should adopt a particular principle derived from a particular federal decision, as Century implicitly urges here.

Footnote 10:Similarly, even if information previously disclosed to Welt was focused more on operations at Brooklyn Union's MGP sites on the Gowanus Canal (see NYSCEF No. 1443 at 19-20), that information would still be relevant to Welt's assessment now of Brooklyn Union's understanding of, and ability to prevent, pollution from the Phase 2 MGP sites when they were operating.